# EXHIBIT "A"

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 23-6356 HURRICANE CASE                    DIVISION "E-7

**BARCADIA BAR & GRILL OF NEW ORLEANS, LLC**

versus

**INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B6045568622021 (CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND RENAISSANCERE SPECIALTY U.S. LTD**

FILED: _____        _____
                                                          **DEPUTY CLERK**

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, BARCADIA BAR & GRILL OF NEW ORLEANS, LLC, who files this Petition for Damages against Defendants, INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY UMR B604510568622021 (CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND RENAISSANCERE SPECIALTY U.S. LTD), for property damage and all other insured losses sustained during Hurricane Ida to Barcadia Bar & Grill located at 601 Tchoupitoulas Street, New Orleans, La, 70130, covered by INDEPENDENT SPECIALTY INSURANCE COMPANY policy number: VVX-CU-803337-01 and CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY UMR B604510568622021 policy number VRR-CU-803337-01. Plaintiff respectfully, represents:

## PARTIES

1.

Made Plaintiff herein is BARCADIA BAR & GRILL OF NEW ORLEANS, LLC ("Plaintiff" or "Barcadia") a Louisiana limited liability company, domiciled in New Orleans, La., duly authorized to do business in the State of Louisiana, and in this Parish.

2.

Made Defendant herein is INDEPENDENT SPECIALTY INSURANCE COMPANY, ("ISIC") who is domiciled in the State of Delaware and whose principal place of business, upon information and belief, is located at 1900 L. Don Dodson Dr., Bedford, Texas 76021. Defendant

1

may be served with Process through the Louisiana Secretary of State and National Registered Agents, Inc. 2 North Jackson Street, Suite 605, Montgomery, Al. 36107.

3.

Made Defendant herein is CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B6045568622021 (CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND RENAISSANCERE SPECIALTY U.S. LTD, (collectively, "Lloyds"), a foreign insurer, who, upon information and belief, is incorporated under the laws of the State of New York and whose principal place of business is located at 25 West 53rd Street, 14th Floor, New York, NY 10019.  Defendant may be served with process through the Louisiana Secretary of State and McDermott, Will & Emery, 340 Madison Avenue, New York, NY 10173-1922.

4.

Made Defendant herein is CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458, a foreign insurer, who, upon information and belief, is incorporated under the laws of the State of New York and whose principal place of business is located at 25 West 53rd Street, 14th Floor, New York, NY 10019.  Defendant may be served with process through the Louisiana Secretary of State and McDermott, Will & Emery, 340 Madison Avenue, New York, NY 10173-1922.

5.

Made Defendant herein is RENAISSANCERE SPECIALTY U.S. LTD, a NAIC alien insurer, who, upon information and belief, is incorporated under the laws of the State of New York and whose principal place of business is One Vanderbilt Way, New York, NY 10017  Defendant may be served with process through the Louisiana Secretary of State and McDermott, Will & Emery, 340 Madison Avenue, New York, NY 10173-1922.

6.

For clarity's sake, the insurers sued at Defendants herein at Paragraphs 3-5 will collectively be referred to as "Carriers."

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction over the matters alleged herein as the policies of insurance issued by Carriers were issued and delivered in the State of Louisiana.

8.

Venue is proper in this Parish because the property is located in this Parish, the loss occurred in this Parish or the insured is domiciled in this Parish.

## FACTUAL BACKGROUND

9.

On or about June 18, 2021, Carriers entered into a contract of insurance with Barcadia as a Named Insured in Louisiana, bearing policy numbers VVX-CU-803337-01 and VRR-CU-803337-01 whereby a premium was paid to Carriers for their promise to compensate Barcadia in the event of a covered loss to the premises located at 601 Tchoupitoulas Street, New Orleans, LA 70130 ("insured premises.")

10.

At all pertinent times, Carriers transacted the business of insurance in the State of Louisiana and the basis of this suit arises out of such conduct.

11.

At all pertinent times, policies VVX-CU-803337-01 and VRR-CU-803337-01 were in full force and effect with a policy period June 218, 2021, through June 18, 2022.

12.

The Policy issued by Carriers provided coverage limit of $1.8 million on the building and $1.4 million on business income losses. The policies also provided coverage for equipment breakdown, and additional sub-limits per endorsement. The Carriers assessed the risk and provided the coverage limits following their evaluation of the Barcadia's property.

13.

All premiums associated with the policies were paid when due in a timely manner and without delay.

3

14.

The contracts of insurance were entered into by Barcadia with the reasonable expectation that in return for the payment of the premium, Carriers would abide by the terms of their policies and pay for any covered losses that may occur timely and adequately.

15.

On August 29, 2021, while the policies were in full force and effect, the insured premises sustained damage caused by Hurricane Ida, a major category four hurricane, which made a catastrophic landfall with high sustained winds.

16.

Devastating winds and rains lasted for hours as the hurricane passed over New Orleans.

17.

Hurricane Ida caused extensive damage including shredding the power grid and damage to thousands of structures, including the insured premises.

18.

As a result of Hurricane Ida, the insured premises sustained extensive damage to the interior and equipment. As a result, Barcadia sustained business income losses and spoilage losses.

19.

The damage to the building and interior equipment was significant and readily apparent. Barcadia was advised by a licensed electrician to turn off all power due to the substantial water intrusion. Water was observed coming through light fixtures, the ceilings, and the walls. Barcadia mitigated as much as possible in accordance with its duties under the policies.

20.

Barcadia provided timely and proper notice of the claim to Carriers immediately following Hurricane Ida's landfall.

21.

A representative of Carriers and Barcadia discussed the claim on September 3, 2021.

22.

Following this conversation, the Carriers' representative made a request for information concerning a number of documents. Barcadia complied on September 4, 2021, by submitting the following for review by the Carriers: 1) lease; 2) amendment to lease; 3) photos of the damaged area; and 4) food spoilage loss inventory.

4

23.

To comply with all applicable policy requirements and to assist the Carriers in their claims investigation, Barcadia submitted more photos to the Carriers on September 6, 2021.

24.

On September 9, 2021, Barcadia provided Carriers with documentation regarding business income losses, per the request of Carriers' forensic accountants.

25.

Andrew Sanchez with Charles Taylor Adjusting was assigned the independent adjustment of the claim.  Mr. Sanchez initially inspected the loss on September 8, 2021.  During that initial inspection, evidence of water intrusion was observed throughout Barcadia's interior and damaged equipment was also observed.

26.

On September 11, 2021, Barcadia advised the Carriers, through its third-party administrator Sedgwick Delegated Authority, that they were seeing more damage daily.  Barcadia also advised that lighting and cameras were damaged.  And, further, that these items could be kept for inspection if the Carriers wanted to give them to the field adjuster.  Barcadia was advised that the equipment did not need to be given to the field adjuster.

27.

Throughout September, October, and November 2021, the Carriers requested information from Barcadia indicating the same was necessary for claim investigation.  Barcadia cooperated with all of the Carriers' requests and continued to submit supporting documentation for Barcadia's Hurricane Ida claim.

28.

Despite submitting all the documentation requested by the Carriers, the majority of the documentation was largely ignored by the Carriers. n

29.

Submissions made to the Carriers included but are not limited to the following:

a)  September 16, 2021-Beer loss
b)  September 22, 2021 - Submission of HVAC report regarding damages and request for advance;
c)  October 5, 2021- Invoices submitted for Garden Gates Landscape; Design for lighting; and iDesign for Ohm Lounge lighting;
d)  October 6, 2021-Invoices for Spoilage/Food Loss
e)  October 7, 2021- Décor replacement invoice sent the Carriers;
f)  October 7, 2021-Invoice sent for kitchen equipment replacement

g)    October 19, 2021- Quote for draft beer cooler system:
h)    October 22, 2021- Supporting documentation for spoilage claim (sent previously);
i)    October 22, 2021- Sent Contractor remediation Invoice;
j)    October 22, 2021- Landlord confirmation of improvements and betterments work to building in 2010;
k)    October 28, 2021- 2020 Asset Details;
l)    November 2, 2021- AIA contractor draws for 2010 build out;
m)    November 5, 2021-Décor invoices and Arcade equipment costs; and
n)    November 24, 2021- Remediation Invoice, mold assessment and report.

30.

On September 22, 2021, the Carriers, through the independent adjuster Mr. Sanchez, acknowledged receipt of the HVAC report and advised he would request an advance from the Carriers advising he thought the Carriers would be "fair with the advance."

31.

On October 11, 2021, Mr. Sanchez issued his "Preliminary Report #1." However, this report was never provided to Barcadia until after counsel became involved. Mr. Sanchez estimated the damage to the inured premises related to Hurricane Ida and in addition, recommended an advance. Neither have been paid to Barcadia to date.

32.

On October 22, 2021, over thirty (30) days from the date the claim was reported and initially inspected, Sedgwick, on behalf of the Carriers asked Barcadia for spoilage supporting documentation and copies of "receipts" showing the build out in 2010. Barcadia complied and on this same date, sent the supporting documentation for spoilage which was previously sent on September 4 and 6, 2021. Barcadia also sent a remediation invoice on October 22, 2021, for work to remediate water damage to Barcadia.

33.

The submissions sent to the Carriers on October 22, 2021, were not paid timely and not paid to date.

34.

Barcadia's insurance agent emailed the Carriers through Sedgwick on October 22, 2021, asking for an advance and inquiring into the reason an engineer was being engaged so late in the claim process.

35.

On October 22, 2021, the landlord emailed Sedgwick, on behalf of the Carriers, confirming all improvements/work performed by Barcadia during the 2010 build out including but not limited to installing HVAC units, duck work, lighting, ceiling, flooring, appliances, and modifications to all utilities. However, Sedgwick, on behalf of the carriers, erroneously failed to accept this documentation to confirm ownership causing further unreasonable delay of the claim.

33.

Per the request of the Carriers, on October 25, 2021, all requested supporting documentation on Business Income losses was submitted to the Carriers' forensic accoutnants. To date, no amounts have been paid to Barcadia for Business Income losses.

34.

As no payment was made on the claim following sixty (60) days from the date of loss, Barcadia's insurance agent emailed the Carriers to inquire into the status of the claim. The insurance agent also asked for an advance to cover continuing losses for business income loss and building damage.

35.

On October 29, 2021, sixty (60) days after date of loss, the Carriers approved and issued an advance. The advance was not for the amount recommended by the initial adjuster Mr. Sanchez, and was substantially less. Further, Mr. Sanchez's estimate and report were not attached to this payment letter.

36.

On October 29, 2021, the Carriers issued a Reservation of Rights advising the claim was under investigation because the Carriers have been unable to "confirm ownership of some of the items claimed damaged." In an apparent attempt to further delay the claim, the Carriers improperly asked for invoices and receipts showing ownership of 1) HVAC Units and Duct Work; 2) video and Sound System; 3) lighting system; 4) ceiling and flooring; 5) appliances; and 6) any Betterments an Improvements damaged.

37.

On November 2, 2021, the Carriers advised that an email from the landlord was not sufficient "proof of ownership" and that the Carriers were requesting "proof that you paid for these

7

items to be considered." The Carriers also advised that Barcadia's 2020 "asset detail" submission was not sufficient to show proof of ownership.

38.

Barcadia's agent, on November 2, 2021, confirmed ownership of the requested items, and again, explained that Barcadia built out the entire space, walls, floors, equipment, in 2010, pre - loss. He asked that the tax returns be sufficient for proof of ownership. In addition, the agent submitted the AIA contractor draws for the build out.

39.

On November 2, 2021, after the agent's email, the Carriers accepted the same as "proof of ownership." However, to date, the Carriers have not paid any additional funds for damages following the October 2021 advance.

40.

Upon information and belief, the Carriers' decision not to issue any additional payments on Barcadia's Hurricane Ida claim was based upon an erroneous, inaccurate, and bias report from an engineer retained by the Carriers.

41.

On December 1, 2021, Barcadia followed-up with the Carriers retained accountant for business income losses as no amount had been tendered for that portion of the loss.

42.

Barcadia inquired again on December 10, 2021, regarding why a business loss income payment had not been issued. No payment has been issued.

43.

On January 11, 2022, Barcadia's insurance agent emailed the Carriers with an HVAC report showing that over one thousand gallons of water may have entered Barcadia following Hurricane Ida. He asked that the report be reviewed and considered so that the claim can move to settlement.

44.

After not receiving a response, on February 18, 2022, the insurance agent emailed the Carriers again with an engineering report pointing out the problems and lack of investigation performed by the Carriers' retained engineer.

8

45.

On March 22, 2022, the insurance agent emailed the Carriers requesting resolution of the claim. There was no response.

46.

To date, no claim payments have been made following the initial advance.

47.

On October 31, 2022, satisfactory proof of loss and supporting documentation was provided to the Carriers. The Carriers have not issued any additional funds following the submission.

48.

The payment to date, advance only, is woefully inadequate to return the property to pre-loss condition. Due to the actions of the Carriers in late payment and underpayment of the claim, Barcadia has not been able to remediate the water damaged areas and is operating with a facility that is still damaged. Barcadia was not able to operate the kitchen for lunch service until June 2022, and its sales are still way behind what they were pre-storm. The HVACs are not working properly and there is concern that if water damage and intrusion are not remedied due to underpayments by the Carriers will lead to further damage, limiting its ability to serve customers causing further business income losses.

49.

The Carriers have been advised that further damage is ongoing to the HVAC systems. The Carriers have ignored and not paid any additional funds despite being put on notice of the damage.

50.

The Carriers have been put on notice of significant Business Income losses along with documentation supporting same. The Carriers have failed to tender any funds for Business Income loss which is unreasonable, arbitrary, capricious, and without probable cause.

51.

Plaintiff is entitled to recover all benefits due under the Carriers policies resulting from Hurricane Ida including, but not limited to, the damages to the insured premises, business income losses, equipment breakdown, recoverable depreciation and any and all consequential damages

caused by the Carriers underpayment, non-payment and late payment of Barcadia's Hurricane Ida claim.

53.

The Carriers were given full access to inspect the insured locations at all times and during all requested inspections the Carriers had ample opportunity to view all the damage.

54.

Louisiana law provides claims handling timelines which are strictly construed.

55.

Insurers have the duty to initiate loss adjustment of a property damage claim within thirty (30) days after the notification of loss by a claimant for a catastrophic loss which may be extended by the Insurance Commissioner. La. R.S. §22:1892(A)(3).

56.

Under La. R.S. §22:1892(A)(1), insurers must pay the amount of any claim due within thirty (30) days after receipt of satisfactory proof of loss from the insured or any party in interest.

57.

Under La. R.S. §22:1892(A)(4), all insurers must make a written offer to settle any property damage claim, within thirty (30) days after receipt of satisfactory proof of loss of that claim.

58.

The arbitrary, capricious, or without probable cause failure to comply with La. R.S. §22:1892(A)(1) and §22:1892(A)(4) subjects the insurer to a penalty, in addition to the amount of loss, of fifty percent on the amount found to be due from the insurer to the insured or $1,000, whichever is greater. If partial payment of tender is made, the penalty is fifty percent of the difference between the amount paid or tendered and the amount due. These penalties are in addition to reasonable attorney fees and costs. La. R.S. §22:1892(B)(1).

59.

Under La. R.S. §22:1973(A), insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims with the insured. Failing to pay the amount of any claim due any insured within sixty (60) days after satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without, probable cause is a breach of the insurer's affirmative duty. La. R.S. §22:1973(B)(5).

60.

In addition to any general or specific damages to which the insured is entitled to, a breach of the 60-day timeline subjects the insurer to penalties in an amount not to exceed two (2) times the damages sustained or $5,000, whichever is greater. La. R.S. §22:1973(C).

61.

An insurer has satisfactory proof of loss once it has sent an adjuster to inspect the property, even if the adjuster provides an incomplete report, because the insurance company had the opportunity to discover the extent of the damages. *J.R.A. Inc. v. Essex Ins. Co.*, 2010-0797 (La. App. 4 Cir. 5/27/11), 72 So. 3d 862; *see also Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930.

62.

The statutory timeline starts from the initial inspection and not from any final report by the insurer. *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930.

63.

In compliance with its duties, Barcadia fully cooperated with Carriers and its consultants, by making the property fully and reasonably available for the viewing of the physical loss evidence, and by timely cooperating with all requests for information, as well as submitting to an Examination Under Oath.

64.

Barcadia sent sufficient proof of loss to the Carriers providing evidence of the damages in writing and during the inspections requested by Carriers' assigned adjusters and/or consultants which inspections were allowed by Barcadia.

65.

The Carriers and their consultants knew or should have known that undisputed amounts must be disbursed and cannot be delayed because other portions of the claim have not been decided. *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930.

66.

The Carriers unreasonably delayed the claim adjustment, the claim payment, and underpaid the claim, to the detriment of Plaintiff and Plaintiff had to retain undersigned counsel to handle communications with Carriers to bring the claim to conclusion.

67.

Amicable resolution of the claim was requested with the Carriers prior to filing suit to no avail.

68.

The proof of loss submissions on all insured properties provided satisfactory proof of loss in so far as they contained the Plaintiff's investigation of the claim and sufficient information providing the extent of the loss to allow Carriers to make a determination on the loss.

69.

The Carriers have failed to timely and reasonably adjust the loss and adequately respond to the formal proof of loss.

70.

Despite the Carriers' failure to timely pay the evidenced and documented losses, Plaintiff has continued to reasonably work with the Carriers and their consultants to ensure compliance with their duties under the policy including but not limited to allowing inspections, submission and response to multiple requests for information, and agreeing to undergoing an Examination Under Oath. This cooperation in no way absolves Carriers from their duties under the law.

71.

The Carriers have unjustifiably failed and/or refused to perform their obligations under the policies and have wrongfully or unfairly denied and limited payment on the Plaintiff's claim.

72.

Upon information and belief, the Carriers purposely and/or negligently: a) failed to timely tender proceeds due after having received satisfactory proof of loss; b) misrepresented the terms and conditions of the Policy at issue; c) conducted the investigation and claims handling in bad faith; d) manipulated and/or set its pricing software to artificially suppress the cost of repairs below market value; e) failed to adequately pay for losses as required by the Policies, and/or f) failed to

timely acknowledge and honor documentation supporting Barcadia's claim in unreasonably, arbitrarily, and without probable cause.

73.

Plaintiff has incurred and will continue to incur additional expenses and/or delays in making repairs because of the Carriers failure to pay for all losses due under the Policies and on the Claim at issue.

74.

Plaintiff has incurred professional expenses, including expert and/or attorney's fees, to determine and/or prove that the Carriers wrongfully failed to adequately/timely pay on the Claim at issue.

75.

Plaintiff has also sustained consequential losses due to the lack of payment of the claims, late payments on the claim, and due to the substantial delays in the claims handling.  Barcadia's consequential losses include substantial and catastrophic losses due to the inability to open its kitchen and return its food business to pre-loss condition causing Barcadia to close.

## CAUSES OF ACTION

76.

Each section below containing a cause of action fully incorporates all facts and allegations set forth in each section previously set forth herein.

## BREACH OF CONTRACT

77.

The Carriers breached the terms of the policies when they unjustifiably failed and/or refused to perform their obligations in accordance with their policies and under Louisiana law by failing to timely and adequately pay for all benefits due to the Plaintiff.

78.

This breach of the insurance contracts was and is the direct and proximate cause of damage to the Plaintiff for the repair of Plaintiffs' insured premises and equipment with like kind and quality material as existed at the time the hurricane occurred.

79.

By virtue of the breach of contract, the Carriers are liable to and owe Plaintiff for the actual

damages sustained as foreseeable and a direct result of the breach and all other damages the

Plaintiff may prove as allowed by the law.

**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

80.

The Carriers received satisfactory proof of the loss indicating the insurance benefits were

due and owed to the Plaintiff but failed to timely investigate, pay, and settle the loss. Failure to

make such sufficient payment within thirty (30) days was arbitrary, capricious, and without

probable cause, subjecting the Carriers to a penalty, in addition to the amount of the loss, of 50%

of damages on the amount found to be due from the insurer to the insured, as well as reasonable

attorney's fees and costs pursuant to La. R.S. §22:1892.

81.

The Carriers owe Plaintiff an affirmative duty to adjust claims fairly and promptly and to

make a reasonable effort to settle such claims but breached that affirmative duty by failing to pay

the amount due on this claim within thirty (30) days of receiving satisfactory proof of loss by

acting in an arbitrary, capricious, and without probable cause manner, subjecting the Carriers to a

penalty of two times the amount of damages sustained, or $5,000, whichever is greater, pursuant

to La. R.S. §22:1973 and any consequential damages sustained as a result of Carriers breach of

their duties.

**DAMAGES**

82.

As a result of the actions of the Carriers, Barcadia has suffered the following nonexclusive

list of damages past, present, and future in amounts reasonable in the premises:

    a.  Repair and remediation expenses;

    b.  Business income losses;

    c.  Inability to make appropriate and complete repairs due to inadequate insurance payments;

    d.  Equipment breakdown;

    e.  Any and all other applicable damages arising under any of the policy's sub-coverage limits and additional coverages, per endorsement;

    f.  Actual damages related to the increased cost of repairs;

g.  Consequential damages;

h.  Attorney's fees and penalties; and

i.  Costs of this litigation and any pre-litigation costs related to the insurer's failure to make adequate insurance payments.


83.

Plaintiff's damages exceed those allowed by law for trial by a Jury.  Plaintiff thus prays for trial by jury.

## PRAYER FOR RELIEF

84.

WHEREFORE, Plaintiff herein, BARCADIA BAR & GRILL OF NEW ORLEANS, LLC prays that this Petition for Damages be filed into the record, and that Defendant, INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B6045568622021, CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND RENAISSANCERE SPECIALTY U.S. LTD, be cited to appear and answer same, and after due proceedings are had, there be judgment, rendered in favor of Plaintiff, BARCADIA BAR & GRILL OF NEW ORLEANS, LLC and against Defendants, INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B6045568622021, CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND RENAISSANCERE SPECIALTY U.S. LTD, jointly, severally, and *in solido*, for all damages as are reasonable in the premises, for all costs incurred in this matter, along with legal interest from the date of judicial demand until paid, all statutory

penalties and attorney's fees, for trial by jury, and all general and equitable relief available.


Respectfully Submitted,

*[signature]*

JOHN W. HOUGHTALING, (25099)
SKYE S. FANTACI, (28241)
KEVIN R. SLOAN, (34093)
**Gauthier Murphy & Houghtaling LLC**
3500 North Hullen Street
Metairie, Louisiana, 70002
Telephone:    (504) 456-8600
Facsimile:    (504) 456-8624
Emails:    john@gmhatlaw.com
        skye@gmhatlaw.com
        kevin@gmhatlaw.com

Attorneys for Plaintiff, BARCADIA BAR &
GRILL OF NEW ORLEANS, LLC


Please serve this Petition for Damages, Request for Notice, Verification, and Hurricane Case
Management Order, Civil District Court, Parish of Orleans

INDEPENDENT SPECIALTY INSURANCE COMPANY
Through its Agent of Process:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

INDEPENDENT SPECIALTY INSURANCE COMPANY
Through its Agent of Process designated in Insurance Policy No. VVX- CU-803337-01
National Registered Agents, Inc.
3867 Plaza Tower Dr
Baton Rouge, LA 70816-4378


CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO
BINDING AUTHORITY B6045568622021
Through its Agent of Process:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809


CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO
BINDING AUTHORITY B6045568622021
Through its Agent of Process designated in Insurance Policy No. VRR-CU-803337-01
McDermott, Will & Emery
340 Madison Avenue
New York, NY 10173-1922


CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458
Through its Agent of Process designated in Insurance Policy No. VRR-CU-803337-01
McDermott, Will & Emery
340 Madison Avenue
New York, NY 10173-1922

A TRUE COPY

*[signature]*

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458
Through its Agent of Process
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

RENAISSANCERE SPECIALTY U.S. LTD
Through its Agent of Process designated in Insurance Policy No. VRR-CU-803337-01
McDermott, Will & Emery
340 Madison Avenue
New York, NY 10173-1922

RENAISSANCERE SPECIALTY U.S. LTD
Through its Agent of Process
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.                          HURRICANE CASE                  DIVISION "   "

BARCADIA BAR & GRILL OF NEW ORLEANS

versus

INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS
AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY
B6045568622021 (CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND
RENAISSANCERE SPECIALTY U.S. LTD

FILED: _____        _____
                                                    DEPUTY CLERK

REQUEST FOR NOTICE

NOW INTO COURT, through undersigned counsel, comes Plaintiffs, BARCADIA BAR

& GRILL OF NEW ORLEANS, LLC who pursuant to La. Code Civ. Proc. Article 1572, hereby

requests written notice at least ten (10) days in advance of the date fixed for the trial or hearing of

any exception, motion, rule or trial on the merits in the captioned proceeding and, pursuant to La.

Code Civ. Proc. Articles 1913 and 1914, hereby requests immediate notice of all interlocutory and

final orders and judgments on exceptions, motions, rules, or the trial on the merits in the captioned

proceeding.

Respectfully Submitted,

GAUTHIER MURPHY & HOUGHTALING LLC

_____
JOHN W. HOUGHTALING, (25099)
SKYE S. FANTACI (Bar #28241)
KEVIN R. SLOAN (Bar #34093)
**Gauthier Murphy & Houghtaling LLC**
3500 North Hullen Street
Metairie, Louisiana, 70002
Telephone:    (504) 456-8600
Facsimile:    (504) 456-8624
Emails:        skye@gmhatlaw.com
                    kevin@gmhatlaw.com

Attorneys for Plaintiff, BARCADIA BAR &
GRILL OF NEW ORLEANS, LLC

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.                    HURRICANE CASE            DIVISION " "

BARCADIA BAR & GRILL OF NEW ORLEANS

versus

INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS
AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY
B6045568622021 (CERTAIN UNDERWRITERS AT LLOYD'S – SYNDICATE 1458 AND
RENAISSANCERE SPECIALTY U.S. LTD

FILED: _____          _____
                                              DEPUTY CLERK

**VERIFICATION**

The undersigned, Barcadia Bar & Grill of New Orleans, LLC, through its Managing
Member, William Peter Blatty, Jr., Plaintiff in the above-captioned Petition for Damages hereby
verifies that the statements contained in the Petition for Damages are true and correct to the best
of his knowledge, information, and belief.

Dated: __7/5/23__          Name: William Peter Blatty, Jr.

                           Signed: _U. Q. Peter Blatty, Jr._

Notary Public: _____
Commission is for Life

        JASON Z. LANDRY
          LSBA # 33932
         NOTARY PUBLIC
MY COMMISSION IS ISSUED FOR LIFE

IN RE: HURRICANE IDA CLAIMS

**2022-03492**

**SECTION 15**

STATE OF LOUISIANA **FILED**

PARISH OF ORLEANS 2022 APR 21 AM 11: 32

CIVIL DISTRICT COURT CIVIL
DISTRICT COURT

DEPUTY CLERK

## CASE MANAGEMENT ORDER
## REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left destruction throughout south Louisiana as a major Category 4 Hurricane.[1] Major Hurricane-force winds, with gusts in excess of 192 mph inflicted catastrophic damage throughout south Louisiana and hurricane force winds impacted this Court's jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes the likelihood of a high volume of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the 2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[4]

Act 318 authorizes this court to issue this CMO, this Court finds it warranted to best accommodate the adjudication of Hurricane cases in this Court.[5] Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the New Orleans community to move forward with crucial recovery efforts, in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0cc1dc86-0a90-11ec-827e-6342102b8d5d.html
[2] https://www.theadvocate.com/baton_rouge/news/business/article_10bb5488-11d0-11ec-82c3-e3dd67bc12ad.html    https://www.nbcnews.com/news/us-news/live-blog/hurricane-ida-live-updates-8-30-n1277989/ncrd1278026#liveBlogHeader
[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane.
[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for Orleans Parish in Hurricane Ida under FEMA Release No. HQ-21-181. Orleans Parish qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).
[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14th Judicial District Court following Hurricane Laura.

1

VERIFIED
04|21|2022

applicable to all Hurricane Cases currently pending or hereafter filed in this Court (Civil District Court for the Parish of Orleans).

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED that** there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED that** the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED that** each party shall supplement their Initial Disclosures at least twenty-one days prior to any scheduled mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED that** all other discovery is stayed until certification of the completion of the SSP. However, the Special Master may authorize limited formal

---

[6]https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Dis covery_Protocols.062121.tzd_0.pdf

[7] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at*
https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf

[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.

discovery during the SSP in extraordinary circumstances.[9]

**SECTION 2. PRIVILEGE**

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[10] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[11]

Therefore, **IT IS FURTHER ORDERED that** any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include: the author(s) of the document, the recipient(s) of the document (including direct recipients and recipients copied), indication (e.g., with an asterisk) of which individual(s) (authors and recipients) are attorneys (or paralegals or other legal staff carrying out a legal function for an attorney), the date of the document, subject line of the document, title of the document, the nature of any privilege(s) asserted, and a description of the document (over which a privilege is asserted) in a manner that, without revealing information itself privileged or protected, will enable the Special Masters and/or the Court to assess the claim.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and

---

[9] The parties are encouraged to make requests for limited discovery in complex cases when necessary to effectively participate in the SSP outlined herein.

[10] La. C.C.P. art. 1424(A)

[11] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.tzd.pdf

United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the opposition.

## SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS E. JOHN LITCHFIELD, ESQ. AND CADE R. COLE, ESQ.** as the Special Masters for Hurricane Cases in the Orleans Civil District Court.

As part of their appointment, the Court mandates that the Special Masters shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED** that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### I.    *The Special Masters*

The Special Masters shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Masters may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

### II.    *Compensation of Appointed Neutrals*

The Special Masters and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour;

B. $280 per case for the Special Masters for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference

4

means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Masters, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[12] If the claim settles for $25,000 or less, then 100% of the above fees and expenses shall be paid by the defense(s).

**IT IS FURTHER ORDERED** that $70 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk of court, and remitted monthly to the Special Masters; and that $210 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Masters.

### III.    Role of Appointed Neutrals

A. The Special Masters and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Masters, at the Special Masters' discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Masters and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Masters and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Masters may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Masters.

E. If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

### IV.    Notice to the Special Masters.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). **IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Masters, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Masters whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Masters of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Masters shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

---

[12] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant. It is generally customary in the event of settlement that a condition of settlement be that the insurer pays court costs and costs of the SSP/mediation.

## SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days of the receipt of a copy of this Order by the defendant or its counsel, including by electronic or other means – whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

### I.    First Stage: Settlement Conference

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and/or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 48 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Masters may order any particular modifications in this protocol for specific cases, parties, or attorneys.

### II.    Second Stage: Mediation

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Masters written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Masters may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Masters shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Masters (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to

schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Masters may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Masters, including on a weekend day.

## A.    Conduct of Mediation

After scheduling an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Masters the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone or video communication, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

## B.    List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators / appointed neutrals) for the SSP:

The Special Masters and any other person qualified pursuant to R.S. 13:4165(F)(5) that is designated by the Special Masters after consultation with the Court (including those identified in the attached list).

## C.    Neutral Training

The Special Masters may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Masters may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Masters may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Masters may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Masters may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

## III.    Extensions of Time

Upon a joint request by the parties, or for other good cause shown, the Special

7

Masters may modify any deadline specified in this Order.

**SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES**

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Masters via email at HurricaneIda@colelaw.us and jlitchfield@berriganlaw.net . This deadline may be extended by a Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, a Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's

responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be modified by the Special Masters upon a showing of good cause.

**SECTION 7.**          **CLERK OF COURT AND NOTICE**

A Plaintiff filing a Hurricane Case should note on its cover letter, in ***ALL CAPS*** and ***RED FONT,*** that the matter is a "HURRICANE CASE". **Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.** If a Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Masters the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Masters in the same manner as enrolled counsel via email at Hurricanelda@colelaw.us and jlitchfield@berriganlaw.net.

**SECTION 7.**          **COURT SUPERVISION**

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. **All provisions of this Order shall be applicable to all Hurricane Cases whether then pending or thereafter filed.**

**SO ORDERED** on this \_\_\_16\_\_ day of December, 2021, at New Orleans, Louisiana.

HON. ELLEN M. HAZEUR
District Judge, Division A

HON. RACHAEL JOHNSON
District Judge, Division B

HON. SIDNEY H. CATES IV
District Judge, Division C

HON. NAKISHA ERVIN-KNOTT
District Judge, Division D

9

**HON. OMAR MASON**
District Judge, Division E

**HON. JENNIFER M. MEDLEY**
District Judge, Division F

**HON. ROBIN M. GIARRUSSO**
District Judge, Division G

**HON. MONIQUE BARIAL**
District Judge, Division H

**HON. LORI JUPITER**
District Judge, Division I

**HON. NICOLE SHEPPARD**
District Judge, Division J

**HON. BERNADETTE D'SOUZA**
Chief Judge and District Judge, Division K

**HON. KERN A. REESE**
District Judge, Division L

**HON. PAULETTE R. IRONS**
District Judge, Division M

**HON. ETHEL S. JULIEN**
District Judge, Division N

10

IN RE: HURRICANE IDA CLAIMS    :    STATE OF LOUISIANA **FILED**

:    PARISH OF ORLEANS APR 21 AM 11: 32

:    CIVIL DISTRICT COURT CIVIL

DISTRICT COURT

## EXHIBIT "B"

## STIPULATION FOR MEDIATION

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1.    The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2.    No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3.    The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4.    The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5.    The parties shall not:

1

(i)    Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

(ii)   Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

(iii)  Offer into evidence any statements, views or opinions of the appointed neutral.

6.   The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.   Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Masters as many other sessions thereafter as may be helpful in resolving this dispute.

8.   An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

**PLAINTIFF** _____

Date: _____

**COUNSEL FOR PLAINTIFF** _____

Date: _____

**DEFENDANT** _____

Date: _____

**COUNSEL FOR DEFENDANT** _____

Date: _____

**CONSENTED TO BY:**

**NEUTRAL APPOINTED BY THE COURT** _____

Date: _____

2

IN RE: HURRICANE IDA  CLAIMS          :          STATE OF LOUISIANA **FILED**

                                      :          PARISH OF ORLEANS 2022 APR 21  AM 11: 32

                                      :          CIVIL DISTRICT COURT
                                                        CIVIL
                                                 DISTRICT COURT

### EXHIBIT "C"

### FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage(s) | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | _____ | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ | _____ |

Claim for Statutory Bad Faith Penalties on Late Prior Payments          _____
Claim for Statutory Bad Faith Penalties on ISC Demand          _____
Claim for Attorney's Fees          _____

Total Claim for Other Damages (describe below):          _____

_____
_____
_____

TOTAL          _____

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on changes in circumstances or supplemental information. The plaintiff reserves the right to asserts claims for expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

3

IN RE: HURRICANE IDA  CLAIMS    :    STATE OF LOUISIANA FILED

    :    PARISH OF ORLEANS

                  2022 APR 21  AM 11: 32

    :    CIVIL DISTRICT COURT

                                   CIVIL

**EXHIBIT "D"**    DISTRICT COURT

### FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments | Date(s) |
|---|---|---|---|
| A. Property | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ |
| OTHER: | _____ | _____ | _____ |

Other Detail:_____

TOTAL    _____    _____

4