## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BARCADIA BAR & GRILL OF | : | |
| OF NEW ORLEANS, LLC | : | CASE NO.: 2:23-cv-03125 |
| | : | |
| Plaintiff, | : | |
| | : | DISTRICT JUDGE: |
| v. | : | ELDON E. FALLON |
| | : | |
| INDEPENDENT SPECIALTY | : | MAGISTRATE JUDGE: |
| INSURANCE COMPANY, CERTAIN | : | JANIS VAN MEERVELD |
| UNDERWRITERS AT LLOYD'S AND | : | |
| OTHER INSURERS SUBSCRIBING | : | |
| TO BINDING AUTHORITY | : | |
| B6045568622021 CERTAIN | : | |
| UNDERWRITERS AT LLOYD'S - | : | |
| SYNDICATE 1458 AND | : | |
| RENAISSANCERE SPECIALTY | : | |
| U.S. LTD, | : | |
| | : | |
| Defendants. | : | |

---

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION, TO DISMISS CLAIMS AGAINST DEFENDANTS, OR ALTERNATIVELY, STAY LITIGATION PENDING ARBITRATION

The claims of Independent Specialty Insurance Company (hereinafter referred to as ISIC), Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622021 (hereinafter referred to as Lloyd's), Certain Underwriters at Lloyd's – Syndicate 1458 (hereinafter referred to as 1458) and RenaissanceRe Specialty U.S. Ltd. (hereinafter referred to as RenRe) (collectively known as "Defendants") are subject to mandatory arbitration pursuant to the arbitration agreement contained in the insurance policy at issue (hereinafter referred to as the "Policy"). Because the arbitration agreement falls under the treaty known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter referred to as the "Convention"), this Honorable Court should order all parties to

arbitration and stay this litigation. The strong federal policy of promoting and preserving the arbitration of international disputes requires that this Court only conduct a limited inquiry before compelling arbitration of all claims against all insurers under the insurance policy at issue.

## FACTUAL SUMMARY

### A.
### *The Alleged Loss*

This litigation arises from alleged property damage to property located at 601 Tchoupitoulas Street, New Orleans, Louisiana 70130 (hereinafter referred to as "the Property").

The property damage allegedly occurred as the result of Hurricane Ida on or before August 29, 2021. Plaintiff has sought insurance proceeds under the coverages, terms, and conditions set forth in the policy form for Insurance Policy No. 2021-803337-01 (the "Policy"), a commercial property policy, for alleged losses, including property damage, as well as statutory penalties. At all times relevant, the Defendants, in concert, have investigated, evaluated, and paid the Plaintiff's claims.

### B.
### *The Arbitration Clause*

The Policy contains an "Arbitration Clause," which provides in relevant part:

H.    **Property Loss Conditions**

The following Property Loss Conditions apply:

4.    **Arbitration Clause**

All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.

Unless the parties agree upon a single disinterested or impartial Arbitrator within thirty (30) days of one party receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall

appoint his or her disinterested or impartial Arbitrator and give written notice to the Respondent (the party receiving notice of Arbitration). Within thirty (30) days of receiving such notice from the Claimant, the Respondent shall appoint his or her Arbitrator and give written notice to the Claimant.

If the two Arbitrators fail to agree on the selection of the disinterested or impartial umpire within thirty (30) days of the appointment of the second named Arbitrator, each Arbitrator shall submit to the other a list of three Umpire candidates, each Arbitrator shall select one name from the list submitted by the other and the Umpire shall be selected from the two names chosen by a lot drawing procedure to be agreed upon by the Arbitrators. Unless the parties otherwise agree, the Arbitration Tribunal shall consist of disinterested or impartial persons presently or formerly employed or engaged in a senior position in insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders which it may consider proper in the circumstances of the case, regarding pleadings, discovery, inspection of documents, examination of witnesses and any other matter relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to, and by whom, and in what manner they shall be paid.

Any arbitration hearing shall take place in Nashville, Tennessee unless some other locale is agreed by the Arbitrator or Arbitration Tribunal.

The Arbitration Tribunal may not award exemplary, punitive, multiple, or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

(*See* **Exhibit "A"-Excerpt of Arbitration Clause from the Policy**).

## C.
### *The Settlement of Claims Clause*

The Policy also provides that the amount of loss, if disputed, is to be determined by arbitration:

> The amount of loss under this policy shall be payable within thirty (30) days after valid proof of loss is received, accepted, and ascertainment of the amount of loss is made either by agreement with you or an amount is determined by binding Arbitration in accordance with the provisions of this policy.

(*See* **Exhibit "B" Excerpt of Settlement of Claims Clause from the Policy**).

## LAW AND ARGUMENT

## I.   THIS COURT HAS THE AUTHORITY TO COMPEL ARBITRATION AND STAY THE LITIGATION

The Convention was negotiated and ratified by Congress "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed, and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520, n. 15 (1974);  *1010 Common, LLC v. Certain Underwriters at Lloyd's, London, No. 20-2326, 2020 U.S. Dist.* LEXIS 233867, at *10 (E.D. La. December 9, 2020).  Congress also enacted enabling legislation (the "Convention Act"), empowering courts to enforce the Convention treaty.[1] *See.* 9 U.S.C. §§ 201-208.  Included in that grant of authority is the power to compel the parties to arbitrate:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

9 U.S.C. §206.

Specifically, 9 U.S.C. §202 provides, in relevant part:

An arbitration agreement or arbitral award arising out of a legal relationship,

---

[1] "Congress enacted the Convention Act within the Federal Arbitration Act to establish procedures by which federal courts must follow." *1010 Common, LLC v. Certain Underwriters at Lloyd's, London,* No. 20-2326, 2020 U.S. Dist. LEXIS 233867, at *10 (E.D. La. Dec. 9, 2020).

4

whether contractual or not, which is considered commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

When this Court orders the parties to arbitration, the pending litigation must be stayed. *See* 9 U.S.C. §3 (the court "shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").[2] This stay of litigation is mandatory. *Gulfstream Shipbuilding, LLC v. C-Fly Marine Servs., LLC*, No. 19-9066, 2019 U.S. Dist. LEXIS 138072, at *5 (E.D. La. August 15, 2019); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyds*, 2021 U.S. Dist. LEXIS 20042 at *44 (M.D. La. 2/2/2021).

## II.   THE COURT'S INQUIRY INTO A MOTION TO COMPEL ARBITRATION IS LIMITED.

In exercising its authority to compel arbitration, the Court is guided by the *strong presumption* in favor of arbitrations that fall under the Convention. This federal policy is applied with "special force" on Convention arbitrations:

> *Bremen* and *Scherk* establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions. Here, as in *Scherk*, that presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution. And at least since this Nation's accession in 1970 to the Convention and the implementation of the Convention in the same year by amendment of the Federal Arbitration Act, ***that federal policy applies with special force in the field of international commerce.***

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 638-40, 105 S. Ct. 3346, 3356, 87 L. Ed. 2d 444 (1985) (emphasis added).

This Court's limited inquiry is based on an evaluation of four criteria:

> In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a **very limited**

---

[2] *See also*, *Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, 601 F.3d 329, 332 (5th Cir. 2010) (parties compelling Convention arbitration may seek a stay under 9 U.S.C. §3).

> **inquiry**. Accordingly, a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen (*citations omitted*).

*Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 339 (5th Cir. 2004) (emphasis added);

*See also, Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 685 (E.D. La. 2012) (if the four

criteria for arbitration under the Convention are met, "the Court must compel arbitration").

### A.

### *All Four Criteria for Compelling Arbitration are Satisfied*

**1.     There is a Written Agreement to Arbitrate**

As held in *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-6657, 2018, U.S.

Dist. LEXIS 165894, at *4 (E.D. La. September 26, 2018), an arbitration clause contained in an

insurance policy constitutes an enforceable written agreement to arbitrate. *See also Georgetown*

*Home Owners Ass'n.* v. *Certain Underwriters at Lloyd's*, 2021 U.S. Dist. LEXIS 20042 (M.D.

La. February 2, 2021) at *39, 1 New Appleman on Insurance Law Library Edition @ 7.03, *Glad*

*Tidings Assembly of God Church of Lake Charles v. Certain Underwriters of Lloyd's v. Indian*

*Harbor*, 2021 U.S. Dist. LEXIS 121625 (W.D. La. June 28, 2021), *McDonnel Grp., L.L.C. v.*

*Great Lakes Ins. Se*, 923 F.3d 427, 432 n.8 (5th Cir. 2019); *Sphere Drake Ins. PLC v. Marine*

*Towing*, 16 F.3d 666, 670 (5th Cir. 1994). The subject Policy and the Arbitration Clause therein

is a written agreement to arbitrate all matters in dispute in relation to the coverages under the

Policy.

**2.     The Agreement Provides for Arbitration in a Signatory Nation**

The Arbitration Clause in the subject Policy provides for arbitration in Tennessee, which

is within the territory of the United States. The United States ratified the Convention in 1970,

21U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, reprinted following, 9 U.S.C. § 201 (West Supp. 1998).

### 3.    The Arbitration Agreement Arises from a Commercial Legal Relationship

This District has consistently held that an arbitration clause in an insurance agreement satisfies the requirement that the arbitration agreement arises from a commercial relationship. *Gulledge* at 4. ("The agreement arises out of Defendant's insurance policy, a commercial legal relationship, issued to Plaintiff. ") *See Viator v. Dauterive Contractors, Inc.,* 638 F. Supp. 2d 641, 646 (E.D. La. 2009) ("the agreement arises out of a commercial legal relationship -- a contract of insurance between a mutual protection and indemnity association and an insured").

### 4.    A Named Defendant is not an American Citizen

The Convention requires that at least one of the parties to the arbitration agreement not be a citizen of the United States. In this case, Lloyd's is a citizen of a nation other than the United States, namely the United Kingdom. Underwriters  are partially comprised of the following:

o Syndicate 2987 is an unincorporated association, the managing agent of which is Brit Syndicates Limited and the sole corporate member of which is Brit UW Limited, registered in England and Wales, with its principal place  of business in London, England;

o Syndicate 2003 is an unincorporated association, the managing agent of which is Catlin Underwriters Agencies Limited, and the sole corporate member is Catlin  Syndicate Limited, which  is registered  in England,  with its principal  place  of business in London, England; and

o Syndicate 510 is an unincorporated association, the managing agent of which is Tokio Marine Kiln Syndicates Limited, and the majority corporate member is Tokio Marine

Kiln Group Limited, registered in England and Wales and has its principal place of

business in London, England.

The fourth element is thus satisfied in this case.

Once these four requirements are determined to be present, the Convention requires the

Court to order arbitration. *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 339 (5th Cir.

2004) ("Once these requirements are met, the Convention requires the district courts to order

arbitration"); *See also, Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 685 (E.D. La.

2012). The only exception to enforcing arbitration is if the Court finds that the agreement is "null

and void, inoperative or incapable of being performed." *Freudensprung*, supra at 339.

## B.

### The "Null and Void" Defense is Very Narrow

The "null and void" exception is very narrow and only includes internationally recognized

defenses such as fraud, duress, and mistake. As this Court held in J*ohnson v. NCL (Bah.) Ltd.*, 163

F. Supp. 3d 338, 361 (E.D. La. 2016), "[t]he 'null and void' defense, however, limits the bases upon

which an international arbitration agreement may be challenged to standard breach-of-contract

defenses, such as fraud, mistake, and duress." *See also Sunkyong Eng'g & Constr. Co. v. Born,*

*Inc.*, No. 1998 U.S. App. LEXIS 40290, at *16 (5th Cir. 6/16/1998) ("U.S. courts have narrowly

construed this 'null and void' exception," applying it only to "internationally recognized defenses

such as duress, mistake, fraud or waiver"). The "null and void" exception does not apply to the

instant contract to arbitrate.

## C.

### The Delegation Clause of the Arbitration Agreement Requires all Issues Regarding the Formation and Scope of the Agreement to be Reserved for the Arbitration Panel

The Policy's Arbitration Clause contains a broad delegation clause that requires that the

Arbitration Panel, not the Court, resolve all questions regarding whether specific issues fall within the scope of the Arbitration Clause. The delegation clause provides:

> All matters in difference between the Insured and the Companies in relation (hereinafter referred to as the 'parties') in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereafter set out.

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016) (*citing Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). If an arbitration agreement contains a delegation clause, "the motion to compel arbitration should be granted in almost all cases." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016). *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

The delegation clause in question is broad, encompassing "all matters in difference." *See 5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F. Supp. 3d 785, 790 (S.D. Tex. 2020) ("This Court agrees that *all* means just that—*all*.") This includes all contractual and statutory disputes, including bad faith claims. "Thus, the delegation clause, in this case, refers all disputes, including Plaintiff's bad faith claims, to arbitration." *Georgetown Home Owners Ass'n. v. Certain Underwriters at Lloyd's*, No. 20-102-JWD-SDJ, 2021 U.S. Dist. LEXIS 20042, at *39 (M.D. La. February 2, 2021).

## III.   ALL DEFENDANTS ARE ENTITLED TO COMPEL ARBITRATION.

## A.

### *Plaintiff is Estopped From Objecting to Arbitration*

All Defendants, whether domestic or foreign, are entitled to enforce the Policy's Arbitration Clause under the Convention. Plaintiffs are equitably estopped from objecting to the arbitration where all insurers have acted in concert in evaluating and adjusting a Plaintiff's insurance claims:

> [A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be meaningless, and the federal policy in favor of arbitration effectively thwarted.

*Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).

In a case involving many of the same Defendants as in this matter, and a substantially identical arbitration provision, the Eastern District of Louisiana held that if Plaintiff has alleged interdependent and concerted misconduct, the Plaintiff is estopped from avoiding arbitration:

> Such a deviation is appropriate, for example, in cases of estoppel, through which a court can "estop a signatory from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." [citation omitted] This form of estoppel applies in two different scenarios:
>
> (1) when the "signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract," or
> (2) "when each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."

*Clean Pro Carpet & Upholstery Care Inc. v. Upper Pontalba of Metairie Condo Ass'n.*, 2021 U.S. Dist. Lexis 30111 at *13 (E.D.La. 2/18/2021).

Where Plaintiff fails to differentiate between the alleged actions of any defendant insurer, the claims against the defendant insurers are considered to be concerted and interdependent:

> By failing to differentiate between the wrongdoing by each defendant, Holts alleges interdependent claims. Fairness -- the "linchpin" of equitable estoppel -- militates against arbitrating Holts' claims against Udeo while litigating his identical claims against TNT. Arbitrating claims against Udeo while litigating claims against TNT could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration.

*Holts v. TNT Cable Contractors, Inc*., No. 19-13546, 2020 U.S. Dist. LEXIS 37262, at *8-9 (E.D. La. 3/4/2020). As the Eastern District recently recognized, when there are undifferentiated allegations of misconduct,  "arbitrating claims against one defendant while litigating claims against others could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration." *City of Kenner v. Certain Underwriters at Lloyd's*, No. 21-2064, 2022 U.S. Dist. LEXIS 18621, at *12 (E.D. La. February 2, 2022).

### B.

### *Interdependent and Concerted Conduct in Claims Handling*

The equitable estoppel principle recognized by the Eastern District in *Clean Pro Carpet & Upholstery Care Inc. and City of Kenner*, and by the Fifth Circuit in *Grigs*on, applies to Plaintiff's subject insurance claims against all Defendants.

At all times, Plaintiff has pursued the full value of their claims **without differentiation** between the insurer Defendants, ISIC, Lloyd's, 1458, and RenRe, and their various levels of participation in the Policy. The insurer Defendants have acted interdependently and in concert in adjusting and evaluating the Plaintiff's claims. Plaintiff alleges it notified "Carriers," defined by Plaintiff in its original Petition as the insurer Defendants ISIC, Lloyd's, 1458, and RenRe, of the alleged loss without differentiation (See Rec. Doc. 2, Attachment #1 *Exhibit A-Petition for*

*Damages* at ¶¶ 6, and 20). Plaintiff alleged it provided documentation which constituted satisfactory proof of loss as to Defendants (Id. at ¶¶ 47, 68, 80), who, without differentiation, allegedly failed to timely respond to and properly adjust and pay Plaintiff's claims (Id. at ¶¶ 33, 69, 70-72, 74, 77, 80). Defendants, without differentiation, are alleged to have acted arbitrarily and capriciously and/or to have violated Louisiana law (Id. at ¶¶ 50, 59, 72, 80-81).

Plaintiff recognizes that the alleged conduct of the Defendants was concerted and intertwined. Plaintiff alleges the Defendants' adjustment of Plaintiff's claim constitutes a single, tandem act in "bad faith." (Id. at ¶ 72) . Plaintiffs has prayed for the imposition of a *single* penalty upon all Defendants' intertwined conduct pursuant to La. R.S. 22:1973 (Id. at ¶¶ 60, 81). Without differentiation, Plaintiff has prayed that Defendants be cast in judgment for damages and penalties (Id. at ¶¶  81, 82,  and the paragraph beginning with "Wherefore").

It is manifest that at all times, Plaintiff alleges Defendants have acted in <u>unison</u> and <u>in concert</u> in the adjustment of Plaintiff's claims.

## C.

### *Application of Estoppel*

Courts in the Fifth Circuit have uniformly applied equitable estoppel to substantially similar claims against domestic and foreign insurers subscribing to one policy form. *See. Port Cargo Serv., LLC v. v. Certain Underwriters at Lloyds London*, No. 18-6192, 2018 U.S. Dist. LEXIS 14429 (E.D. La. 8/24/2018) involved a single "insurance policy document" common to all insurers and containing an arbitration clause identical to that found in the subject Policy. The *Port Carg*o insurers invoked their right to arbitrate, as have all insurers on the Policy in the present matter. Plaintiff moved to remand its claims against the domestic insurers, arguing that they were not entitled to arbitration under the Convention. The *Port Cargo* court held that

estoppel applied under *Grigson* due to the interdependent and concerted conduct of all insurers in the adjustment of the claim:

> There are no allegations that one specific insurer breached the terms of the policy. Instead, Plaintiff alleges that the[ir] insurers all breached the terms of the policy together through the shared adjustor. In this dispute, the coverage arguments for all insurers will be identical, and the Plaintiff's evidence of the damage to the property and the alleged breach of the insurance policy will be identical to all insurers. Allowing Plaintiff to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration. Further, Plaintiff's contracts with the domestic insurers contain arbitration clauses identical to the arbitration clauses in Plaintiff's contracts with Hannover and Certain Underwriters. When the parties negotiated the insurance policy, it was contemplated that all disputes against all of the insurers would be determined in one arbitration. Thus, Plaintiff's claims against the signatories and non-signatories to the foreign arbitration clauses are substantially interdependent, and
>
> equitable estoppel is warranted. The Plaintiff must proceed in arbitration against all of the defendants.

*Id.* at 19-21. *See also, Francisco v. Stolt-Nielsen*, 02-2231, 2002 U.S. Dist. LEXIS 23134 (E. D. La. December 2, 2002) (*Grigson* estoppel applied to compel Convention arbitration with non-signatory [domestic] defendants); the *City of Kenner* at *11-12 (Insureds are equitably estopped from objecting to arbitration of claims of intertwined misconduct for signatory and non-signatory insurers.)

The Defendants herein have acted in concert in adjusting Plaintiff's insurance claims. Plaintiff has failed to differentiate between the alleged wrongdoing of any one insurer, carrier, and or alleged Defendant compared to the other insurers', carriers', or other Defendants' actions. Equitable estoppel applies. All insurers on the Policy are entitled to arbitration under the Convention.

## IV.   STATE LAW DOES NOT PREVENT THE ENFORCEMENT OF THE ARBITRATION CLAUSE.

Plaintiffs opposing Convention arbitration frequently argue that La. R.S. 22:868 does not permit arbitration provisions in insurance policies that would "deprive Louisiana courts of jurisdiction or venue." Specifically, it is often argued that the McCarran-Ferguson Act "reverse-preempts" the Convention and that La. R.S. 22:868 invalidates arbitration clauses in insurance policies. However, the Fifth Circuit in *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427 (5th Cir. 2019), held that the McCarran-Ferguson Act applies only to "Acts of Congress." In contrast, the *McDonnel* court held that because the Convention is a treaty, it supersedes the McCarran-Ferguson Act:

> [B]ecause the Convention **supersedes state law**, the McCarran- Ferguson Act's provision that no 'Act of Congress' shall be construed to supersede state law regulating the business of insurance is inapplicable. To the point: the McCarran-Ferguson Act does not permit state laws to reverse-preempt the Convention.

Id. at 431-432 (emphasis added). *See also*, *Safety Nat'l Cas Corp. v. Certain Underwriters*, 587 F.3d 714, 725 (5th Cir. 2009) (holding that "the Convention, an implemented treaty. . . supersedes state law" and the McCarran-Ferguson Act does not apply to Convention cases); Gulledge, at *9 (McCarran-Ferguson Act does not apply to treaties such as the Convention).

## CONCLUSION

All four elements necessary for this Court to compel arbitration have been satisfied. There is a written agreement to arbitrate in the territory of a Convention signatory nation arising from a commercial legal relationship, and a signatory to the agreement is not an American citizen.

Arbitration must be ordered among Plaintiff and all domestic and foreign insurers.  Plaintiff is

equitably estopped from objecting to arbitration with the domestic insurers because all of the

Insurers on the Policy have acted in concert in adjusting this claim. Plaintiff has no grounds to

oppose arbitration. Therefore, the Court should grant the Defendants' motion, compel arbitration,

and dismiss or, in the alternative, stay this litigation.

Dated the 14th day of August, 2023.

<div style="margin-left:2em">

Respectfully submitted,

By:      /s/ Shawn M. Brooks                                              
   Chaunda "Shawn" M. Brooks (La. Bar No. 38607)
   ROLFES HENRY CO., LPA
   8550 United Plaza Boulevard, Suite 702
   Baton Rouge, Louisiana  70809
   Telephone:  (800) 720-0613
   Facsimile:   (228) 299-0430
   E: sbrooks@rolfeshenry.com
   E: lmoore@rolfeshenry.com

   *Attorney for Defendants*

</div>

**CERTIFICATE OF SERVICE**

HEREBY CERTIFY that a true and accurate copy of the foregoing ***Memorandum in Support of Motion to Compel Arbitration and to Dismiss Claims Against Defendants, or Alternatively, Stay Litigation Pending Arbitration*** has been electronically filed with the Clerk of the Courts by using the ECF system, which will send a notice of the electronic filing to the following. I further certify that upon notification from the Clerk of the Court, a copy of the foregoing will be forwarded via U.S. Mail if a party is a non-ECF participant.

> John W. Houghtaling, Esq.
> Skye S. Fantaci, Esq.
> Kevin R. Sloan, Esq.
> GAUTHIER MURPHY & HOUGHTALING LLC
> 3500 North Hullen Street
> Metairie, Louisiana  70002
> john@gmhatlaw.com
> skye@gmhatlaw.com
> kevin@gmhatlaw.com
>
> *Attorneys for Plaintiff*

SO CERTIFIED, this 14th  day of August, 2023.

> /s/ Shawn M. Brooks_____
> Chaunda "Shawn" M. Brooks

16