UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARCADIA BAR & GRILL OF OF NEW ORLEANS, LLC** | **CIVIL ACTION No.: 2:23-cv-03125** |
| Plaintiff | **DISTRICT JUDGE ELDON E. FALLON** |
| **v.** | |
| **INDEPENDENT SPECIALTY INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S AND OTHER INSURERS SUBSCRIBING TO BINDING AUTHORITY B6045568622021 (CERTAIN : UNDERWRITERS AT LLOYD'S - SYNDICATE 1458 AND RENAISSANCERE SPECIALTY U.S. LTD)** | **MAGISTRATE JUDGE JANIS VAN MEERVELD** |
| Defendants | |

<u>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO OPT OUT OF THE STREAMLINED SETTLEMENT PROCESS AND STAY INITIAL DISCOVERY PROTOCOLS**</u>

## <u>TABLE OF CONTENTS</u>

Page No.

Table of Contents ..................................................................................................... 1

I.      Facts and Procedural History ......................................................................... 2

II.     Law and Analysis ........................................................................................... 5

III.    Conclusion ...................................................................................................... 8

## TABLE OF AUTHORITIES

**Page No.**

**Case Authority:**

*In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ...........................................................5

*McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)..................................................5

Barcadia Bar & Grill of New Orleans, LLC ("Plaintiff") respectfully submits this memorandum in opposition to *Defendants' Motion to Opt-Out of Streamlined Settlement Process and Stay Initial Discovery Protocols*. [Rec. Doc 7].  There is no prejudice to Defendants to move forward with the SSP and disclosures given that they have already received a tremendous amount of information relative to the claim at issue including over 2000 pages of documents from Plaintiff as part of Defendants' Requests for Information and having Plaintiff's representative sit for an over 5-hour Examination Under Oath ("EUO").  During the EUO, Mr. Blatty answered all the questions requested of the Defendants.  Following the EUO, more information was provided to Defendants per request.  However, Defendants have failed to offer any amounts to resolve this now over two-year old Hurricane Ida claim.

By this Motion, Defendants continue to unilaterally control the pace of the claim and control of the exchange of documentation, which should be quashed.  Contrary to Defendants' position, allowing the parties to proceed through the Court's CMO will actually encourage resolution as it will ensure the *joint* exchange of information, which can be evaluated by both parties now which may alleviate the need for additional attorney costs and expense of proceeding through a lengthy and costly motion practice on whether the Arbitration clause is applicable and if so, a costly and expensive Arbitration.  Further, Plaintiff has already submitted its Disclosures to Defendants as it is the same information that the Defendants requested the Plaintiff provide over a year ago.  For these and the following reasons, Plaintiff submit that good cause does not exist for the Court to grant Defendants' Motion and it should be denied.

## I.    Facts and Procedural History

Hurricane Ida made catastrophic landfall near Port Fourchon battering southeastern Louisiana as a Category 4 Hurricane and inflicting catastrophic damage across the jurisdiction of the Eastern District of Louisiana.[1]  Barcadia was among the many thousands of structures and businesses severely damaged by Hurricane Ida.   Barcadia immediately notified the Defendants of its losses.  Sedgwick was assigned the claim handling for the Defendants.  The claim was acknowledged on September 2, 2021.  Water damage to the building and interior equipment was significant and readily apparent.  Barcadia was advised to turn off all power due to the substantial water intrusion.  Water was observed coming through light fixtures, the ceilings, and the walls.  Barcadia's staff mitigated as much as possible by mopping up water and bleaching areas where water intrusion and water damage were observed.

Following acknowledgment of the claim, Defendants' representative made multiple Requests for Information concerning a number of documents.  William Petter Blatty on behalf of Barcadia complied on September 4, 2021, by submitting the documents requested by Defendants for review.   Mr. Blatty also submitted a substantial amount of photos to the Defendants regarding the damages.  Barcadia also corresponded with the Defendants' forensic accountant on September 7, 2021, regarding business income losses.  The documentation requested from the Defendants' forensic accountants was provided on September 9, 2021. Further, Mr. Blatty provided the Carriers' forensic accountant with the spoilage inventory on September 9, 2021.

Plaintiff's property was initially inspected on September 8, 2021.  During that initial inspection, water was observed in the hall ceiling, in the temple room, and coming through the

---

[1] *See* First Amendment to Case Management Order No 1 at Rec. Doc. 6.

ceiling of the kitchen.  Ceiling tiles were observed as having fallen in the hallway.  Organic growth was observed.  Water was also observed coming in from the ceiling in various places and water also damaged equipment.  On September 14, 2021, the Defendants' independent adjuster advised he would be sending a "reserve report" to the desk adjuster which would include the Business Income loss as well as building damage.  However, throughout September, October, and November  2021, the Defendants continued to request information from Barcadia indicating the same was necessary for claim investigation.  Mr. Blatty, on behalf of Barcadia cooperated with all of the Carriers' requests and continued to submit supporting documentation for Barcadia's Hurricane Ida claim.

On October 11, 2021, the independent adjuster issued a Preliminary Report #1 which adjusted estimated the property damage at $364, 579.62 Replacement Cost Value and $204,579.62 Actual Cash Value.  The report confirmed interior water damages to "multiple areas of the restaurant including the main seating area, kitchen, lounge, and VIP areas."  He recommended an "advance" be issued of $204, 579.62.  Notably, this advance was never issued to Barcadia.

As no payment was made on the claim for almost sixty (60) days from the date of loss and, given that the Defendants requested an engineer to inspect the loss in October 2021, Barcadia's insurance agent inquired into the status of the claim.  It was noted that the kitchen was operating at 20% and that the insured was in need of an advance.  While the insurance agent understood the Defendants requested an engineer on cause, he wanted to know why it was being requested approximately two (2) months into the claims process.  On October 29, 2021, two (2) months after the date of loss, an advance was forwarded to Plaintiff for $75,000.00, not the $200,000 noted by the independent adjuster.

On October 29, 2021, the Carriers issued a Reservation of Rights advising the claim was

under investigation because the Defendants have been unable to "confirm ownership of some of the items claimed damaged." Defendants requested more information which the Plaintiff provided to move the claim forward. Notably, in the October 29, 2021, Reservation of Rights letter, Defendants did not invoke or even mention the proposed Arbitration provision and it is the position of Plaintiff, potentially waiving the same.

Throughout November and December 2021, and into 2022, Plaintiff and its representatives continued to follow-up with Defendant for additional payment and claim settlement as well as providing Defendants with supporting documentation on the loss. No additional amounts were tendered or offered in settlement of the claim.

Our office was retained, and we sent our Letter of Representation to the Defendants. In response to the Letter of Representation, the Defendants (for the first time) invoked Arbitration, requested an Examination Under Oath, and requesting more documentation from Barcadia pursuant to a Request for Information, all which was provided in cooperation and with the understanding that this would assist with claim resolution.

Barcadia submitted written Proof of Loss to Defendants, through our office on October 31, 2022, noting damages caused by Hurricane Ida and providing a calculation by a local accountant on Business Income loss. Mr. Blatty, on behalf of Barcadia, and at the request of Defendants provided over 2000 pages of documents in response to the Request for Information and underwent an over 5-hour Examination Under Oath November 17, 2022. After not receiving any additional amounts in payment or tender or settlement (despite requests) for any portion of the claim despite the extensive documentation and cooperation of Plaintiff to date with Defendants, Plaintiff filed suit in Civil District Cour for the Parish of Orleans on July 7, 2023. Defendants removed to this Honorable Court on August 4, 2023, and now ask the Court to allow it to Opt-Out of the

4

Streamlined Settlement Process and stay Defendants' obligation under the CMO to provide Mandatory Initial Disclosures. Respectfully, Barcadia has waited long enough for the Defendants to evaluate and offer to settle its claim. Despite the Arbitration clause in the Policy, Barcadia requests that the instant Motion be Denied, and the parties be allowed to proceed through the SSP and Initial Disclosures to prevent and foreclosure further delay on claim resolution.

## II.      Law and Analysis

This Court has "wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery" and "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice."[2] To that end, this Court adopted a Case Management Order ("CMO") for this case, governing discovery in first-party insurance claims from Hurricane Ida "to eliminate increased difficulties to the parties involved [and] to bring as much of this litigation to resolution as expeditiously and justly as possible." [Rec. Doc. 6]. The CMO requires, in part, disaster protocols that call for "prompt sharing of specified information to promote uniformity, to facilitate prompt case evaluation and communication about individual cases/claims, and to facilitate expedited mediation" and then a Streamlined Settlement Process designed to assist in expediting resolution of claims after said document exchange. [Rec. Doc. 6]

While the Plaintiffs have shared information with Defendants with over 2000 pages of documentation supporting the claim and have complied with the Court's mandatory Initial Disclosures, Plaintiffs have not been provided with any of the Defendants' claims files or other significant materials required under the CMO protocols. The Plaintiff has received, after several requests, what it believes are the reports from the claims professionals who were involved in the claim but has not received the full claim file materials. This is one of the key concepts leading to

---

[2] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

the high statistical success rate of resolution of this Court's CMO – the *mutual* exchange of information.

Defendants submit that "subjecting the parties to the Initial Discovery Protocols prior to a ruling on the pending Motion to Compel Arbitration may result in duplicative labor or unnecessary expenses to the Parties as the possibility remains that this dispute will ultimately be subject to arbitration and a corresponding set of procedural and discovery rules that may substantially differ from the aforementioned protocols."[3]  This argument is not good cause and without merit for a few reasons.  First, Plaintiff, at Defendants' request, has already turned a substantial number of documents which labor, expense and time have already been incurred at the request of Defendants.  Second, any documentation turned over during the CMO Initial Disclosure process can be addressed through a discovery order in the Arbitration should the case actually proceed such that the parties can refer back to items that were produced with these disclosures without having to duplicate efforts in the possible Arbitration.  Third, and most important, is that if the case settles at the CMO mediation then the need, costs, expense, labor, and time of going through a possible Arbitration will be eliminated, which is a policy reason for why the CMO was put into place to being with.

It is the dual exchange of information through this Court's CMO process which forces both sides to open their proverbial cupboards and do away with what would otherwise be months of written discovery and motion practice, whether in front of Judge Fallon or through a proposed Arbitration panel.  This is further highlighted by the fact that the Court's CMO while allowing for the potential of an opt-out from the SSP for good cause, does not allow for an opt-out of the entirety

_____

[3] *See* Defendants Memorandum in Support at p. 3.

of the mandatory disclosures, as follows: "The parties may <u>not</u> opt out of the mandatory disclosures required by this CMO and described in Exhibit "A."[4]

After the parties have been able to evaluate each other's documents after the dual exchange of information, the parties utilized a specially trained Court appointed neutral who has mediated numerous of these cases, to get a chance to assist the parties toward a resolution.  Considering same, it is the opposite of good cause to not let this Honorable Court's CMO process carry forward since it is exactly what will minimize cost and expenses by allowing the parties to evaluate its respective positions in light of exchange of documents, and, further, have a Court appointed neutral work to see if he or she can contribute toward finalizing a settlement before both parties expend labor and resources to move forward with Motion practice and potentially an Arbitration.

Defendants further suffer no prejudice from allowing the CMO and related processes to play themselves out like the other thousands of claims set before this Court.  Indeed, they have already retained an adjuster who inspected the property and an engineer to provide a causation analysis.  Defendants have taken the EUO of one of the members of the Plaintiff's LLC and has also requested and been provided thousands of supporting documentation from Plaintiff. Defendants have the Plaintiff's disclosures and the Defendants' exchange should occur imminently.[5]  The parties should receive a post-document exchange mediation date by year end which is much quicker than a Arbitration date would be set.  If proceeding through the Court CMO process does not resolve the claim, the parties can then go through the process of briefing and arguing the Motion to Compel Arbitration, and possibly moving to Arbitration.  Plaintiff sees no

---

[4] *See* Rec Doc. 6, CMO at Section 3. Streamlined Settlement Process at p. 5.
[5] Defendants are supposed to provide their Initial Disclosures thirty days from their answer date making the disclosures due September 11, 2023. They were due on September 9, 2023 which is a Saturday.  The next non-legal holiday is Monday, September 11, 2023.

objective downside for either side in the Court in allowing this case to proceed into the streamlined settlement process and related document exchange.

Defendants have simply failed to show that they have good cause to opt out of the Court's CMO process other than that they simply don't want to participate, want to unilaterally control the exchange of information, and want to continue to delay claim resolution to the prejudice of the Plaintiff who has been waiting to resolve this claim for over two (2) years now despite full cooperation, and incurred time and expense in doing so.  The exchange of information by the parties assists both sides with understanding each other's position to reach a just and expedient amicable resolution.  That is the point of the CMO and the same should be allowed here. Defendants simply have not met their burden.

## III.   CONCLUSION

For these reasons, this Court should exercise its discretion and deny Defendant's request to Opt-Out of the SSP and stay the Initial Discovery protocols.  Defendants have failed to show that good cause exists for their opt-out efforts, as allowing this Court's CMO process to proceed will result in a two-way exchange of information and an opportunity for a mediation after such disclosure, both of which would increase the odds of a resolution potentially saving both parties the time and costly motion practice relative in this Court or through Arbitration.  The issues are not complex and if Defendants were so keen on Arbitration, they could have invoke same at the outset of the claim but did not.  Defendants will not be prejudiced by same and the Court's goal of positioning these hurricane claims to maximize the probability of resolution will be met. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' efforts to opt out of the Case Management Order including the Streamlined Settlement Process and the Disaster Protocols for Initial Disclosure.  Rec. Doc. 7.

Respectfully Submitted,
**Gauthier Murphy & Houghtaling, LLC**

/s/ Skye S. Fantaci

_____

SKYE S. FANTACI, (28241) T.A.
KEVIN R. SLOAN, (34093)
3500 North Hullen Street
Metairie, Louisiana, 70002
Telephone:       (504) 456-8600
Facsimile:        (504) 456-8624
Emails:           skye@gmhatlaw.com
                      kevin@gmhatlaw.com

Attorneys for Plaintiff, BARCADIA BAR &
GRILL OF NEW ORLEANS, LLC